**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-0647 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEANDRE ALLEN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant Deandre Allen's ("Allen") motion to suppress (Doc. No. 21 ["Mot."]) and supplemental motion to suppress (Doc. No. 25 ["Supp. Mot."]) (collectively, the "motion"). Allen seeks a "*Franks* hearing" and to suppress evidence seized from his residence located at 5820 Linda Lane in Garfield Heights, Ohio. The United States of America (the "government") opposed the motion (Doc. No. 26 ["Opp'n"]), Allen filed a reply (Doc. No. 30 ["Reply"]), and the government filed a sur-reply. (Doc. No. 31.) For the reasons that follow, Allen's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

The current motion arises from a police search of Allen's residence pursuant to a search warrant issued on March 14, 2019. (Supp. Mot. at 95[1].) Allen argues that the affidavit—sworn to by Detective Michael Griffis ("Det. Griffis")—in support of the warrant was, for a number of reasons, "woefully [in]sufficient" to establish probable cause (Mot. at 71) and contained "significant misrepresentation[s] and/or omissions[]" (*id.* at 67). Additionally, Allen believes that

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

officers violated the terms of the search warrant by executing it outside the three-day window specified therein. (Supp. Mot. at 95–96.) The crux of Allen's grievance, however, is his belief that the affidavit failed to "establish[] a sufficient nexus between the illegal activity [alleged drug trafficking] and the place to be searched [Allen's Residence]." (*Id.* at 94.) As such, the Court must carefully examine the affidavit's content.

Relevant paragraphs of Det. Griffis' affidavit alleged the following facts:

1.  Affiant is a member of the Solon Police Department and has been a police officer for the past fourteen years. Affiant has worked as a member of the [Southeast Area Law Enforcement Task Force ("SEALE")] SWAT team for the past 9 years and is currently assigned to the [SEALE] Narcotics Task force.

    \*\*\*

6.  Affiant has conducted hundreds of investigations into drug traffickers and drug abusers. Affiant states that he has made in excess of four hundred and fifty (450) arrests for violations of [s]tate and [l]ocal drug laws. Affiant has participated in the execution of narcotic [sic] search warrants, and participated in controlled purchases of narcotics using confidential informants.

    \*\*\*

9.  Affiant states that in March 2019, SEALE [d]etectives were advised by a Confidential Reliable Informant (CRI) about a black male selling heroin at various locations within Cuyahoga County, specifically in and around Garfield Hts. The CRI stated that the male went by "Boo Gotti", and drove a black pick up truck and most recently a silver SUV bearing Ohio registration "GMC4021". The CRI stated that the male used the phone number of (216) 315 6179.

10. Affiant states that [d]etectives ran the license plate of "GMC4021" through LEADS, and discovered that [the plate was registered to] a rental vehicle from Enterprise. Detectives learned that the individual [who] rented the vehicle was a female by the name of Tiffany Jones, who gave an address of 5820 Linda Lane, Garfield Hts (Cuyahoga) Ohio 44125 (said residence to be searched). Detectives ran the address of 5820 Linda Lane through Accurint, and discovered that a male by the name of Deandre Allen was associated with that address as well. SEALE [d]etectives are familiar with Allen, having arrested him for heroin trafficking in 2012.

11. Affiant states that SEALE [d]etectives showed the CRI a BMV image of Allen, and the CRI positively identified Allen as the male going by "Boo Gotti" selling narcotics.

12. Affiant states that in the past 48 hours, 2019, [d]etectives met with this CRI in an

attempt to make a controlled purchase of heroin from Allen. The CRI was searched and found to be free of drugs, money, and contraband, and was provided an amount of pre-recorded police buy money. The CRI was provided with a wireless, digital covert camera, as well as a wireless digital recorder in an attempt to record the drug sale. The CRI contacted him at 216 315 6179, and he agreed to sell the CRI an amount of narcotics. The buy location was set to take place within Cuyahoga County. Detective Griffis followed the CRI directly to the buy location. Detective Sara had set up surveillance on the residence at 5820 Linda Lane, Garfield Hts (Cuyahoga) Ohio 44125 (said residence to be searched) prior to and during the time when the CRI was contacting Allen. The rental vehicle—Ohio registration GMC4021, a 2018 Toyota SUV—was parked in the driveway during this time. After the buy location was made, a short time later, Detective Sara observed Allen leave the residence and drive directly to the buy location. The CRI arrived, and met with Allen. The CRI gave him the pre-recorded police buy money, and in turn Allen sold the CRI an amount of suspected heroin/fentanyl. After the controlled buy was complete, the CRI left the buy location, met with Detective Griffis, and immediately turned over the purchased narcotics to Detective Griffis. The CRI was searched again and found to be free of money, drugs, and contraband.

13.     Affiant states that the purchased narcotics field tested positive for fentanyl via the Nark II test kit, and will be sent to a certified laboratory for further analysis.

14.     Affiant states that [d]etectives have observed the vehicle utilized by Allen (Ohio registration GMC4021) parked in the driveway of 5820 Linda Lane, Garfield Hts (Cuyahoga) 44125 (said residence to be searched) in the early morning hours and late evenings after the controlled buy.

***

16.     Affiant avers that the above mentioned CRI has been made reliable in that CRI has provided information about drug traffickers that has been corroborated by other sources, as well as locations where narcotics are sold from that have also been corroborated by other sources, and has worked with the SEALE Narcotics Task Force on other successful narcotics investigations.

***

19.     Due to the above determined facts, affiant believes that there is probable cause to believe persons in the above location (5820 Linda Lane, Garfield Hts (Cuyahoga) Ohio 44125) are and have been engaged in narcotics trafficking on a continuing basis in the day and night season.

***

(Doc. No. 21-1.)

Detectives obtained a search warrant for the 5820 Linda Lane residence from a Cuyahoga

County Common Pleas judge on March 14, 2019. (Doc. No. 21-1 at 73–74; Opp'n at 100.)

SEALE detectives and SWAT executed the warrant on March 19, 2019. (*Id.*) The silver Toyota SUV was parked inside the garage at 5820 Linda Lane during the search. (*Id.*) Officers "recovered six scales, a money counting machine, heroin/fentanyl, crack cocaine, a high capacity drum style magazine for a Glock firearm, miscellaneous paperwork related to [d]efendant, $6,450 in cash, a SigSauer .357 pistol, and a fully automatic Glock .40 caliber pistol." (*Id.*) Allen now seeks to suppress the fruits of the search and requests a *Franks* hearing.

## II. LAW AND ANALYSIS

### A. *Franks* Hearing

Allen challenges the validity of the search warrant, claiming that Det. Griffis' affidavit contains "significant misrepresentation[s] and/or omissions." (Mot. at 67.) A defendant is entitled to attack the validity of a search warrant, and the supporting affidavit, at an evidentiary hearing known as a *Franks* hearing, if he "(1) 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (quoting *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)). But affidavits supporting a search warrant enjoy "a presumption of validity[.]" *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Thus, a defendant who challenges the veracity of statements made in a sworn affidavit that formed the basis for a warrant bears a "heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Allen has failed to meet that burden.

### a.     Knowing and Intentional False Statements

To warrant a *Franks* hearing, Allen must make a substantial preliminary showing that Det. Griffis' affidavit included a knowing and intentional false statement, or a statement made with a reckless disregard for the truth. Allen believes that Det. Griffis "appears to have lied" about how detectives tied the silver rental car to Allen's address. (Mot. at 67.) Specifically, Allen attacks paragraph 10 of the affidavit in which Det. Griffis states "[d]etectives learned that the individual [who] rented the vehicle was a female by the name of Tiffany Jones, who gave an address of 5820 Linda Lane, Garfield Hts (Cuyahoga) Ohio 44125 (said residence to be searched)." (Doc. No. 21-1 ¶ 10; Mot. at 67.) Allen puts forth two documents that purport to evidence Det. Griffis' knowing false statements—an Enterprise invoice and an affidavit from Tiffany Jones.

The Enterprise invoice shows that Tiffany Jones rented a gray Toyota Rav4 with Ohio registration GMC4021 from February 11, 2019 through March 20, 2019. (Doc. No. 21-1 at 85.) The billing address listed, however, is for a residence in South Euclid, Ohio—not the 5820 Linda Lane address. Because the Linda Lane address is absent from the rental invoice, Allen argues that Det. Griffis was lying when he said that Tiffany Jones "gave" Enterprise that address. (Mot. at 67; Supp. Mot. at 126.) In fact, in her affidavit, Tiffany Jones asserts that she did not "give Enterprise the address of Linda Lane" but she did "sign a lease for the property" and she "moved into 5820 Linda Lane" after Allen's arrest. (Doc. No. 30-2 ¶¶ 6 – 8.)

As an initial matter, Det. Griffis did not say in his affidavit that the Enterprise invoice was used as the basis for his statement. Instead, he simply averred that Tiffany "gave" Enterprise the Linda Lane address. In its opposition brief, the government concedes that the address on the

5

Enterprise invoice is for a residence in South Euclid, Ohio, but clarifies that Det. Griffis "contacted Enterprise" during his investigation and Enterprise informed him "that Ms. Jones provided the address on Linda Lane." (Opp'n at 101.) In reply, Allen argues that facts related to Griffis' investigation and his communications with Enterprise were "not [included] in the affidavit" and there is no other evidence "supporting the fact that Ms. Jones gave the address at Linda Lane." (Reply at 126.) But Det. Griffis was not required to include detailed facts regarding his investigation.

The Sixth Circuit has stated that *Franks* hearings based on omissions should only be granted in "rare instances." *Graham*, 275 F.3d at 506 (quoting *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998)), *cert. denied* 524 U.S. 942, 118 S. Ct. 2352, 141 L. Ed. 2d 722 (1998). In fact, "except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays*, 134 F.3d at 816 (emphasis in original). There is no indication, nor has Allen argued, that Det. Griffis omitted specific facts about his investigation with an intention to mislead. Nor are such facts critical to a finding of probable cause. While Det. Griffis could certainly have been more explicit when outlining how he "learned" that Tiffany Jones "gave … [the] 5820 Linda Lane" address to Enterprise (Doc. No. 21-1 ¶ 10), such details were not strictly

necessary.[2] *United States v. Thomas*, 605 F.3d 300, 309 (6th Cir. 2010) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.") (quotation marks and citation omitted).

Neither the Enterprise invoice nor Tiffany Jones' affidavit is evidence that Det. Griffis made a deliberate false statement or acted with a reckless disregard of the truth. *See Franks*, 438 U.S. at 171. Nevertheless, even assuming Allen made the requisite "substantial preliminary showing" that the warrant affidavit contained knowing and intentional false statement, he is not entitled to a *Franks* hearing because the alleged false statements were not necessary for a probable cause finding.

### b.    Alleged False Statements Not Necessary for Probable Cause Finding

Under the second prong of the *Franks* test, no evidentiary hearing is required if "there remains sufficient content in the warrant affidavit to support a finding of probable cause" after the allegedly false statements are set aside. *United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009) (citing *Franks*, 438 U.S. at 171–72). "The redacted affidavit establishes probable cause if it 'provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at' the stated location." *Id.* (quoting *Graham*, 275 F.3d at 504) (alternation in original). It is this element that dooms Allen's motion. Even setting aside Det. Griffis' statement that Tiffany Jones "gave" Enterprise the Linda Lane

---

[2] Allen identifies two other purported omissions that he believes support the need for a *Franks* hearing, namely, "there is a clear omission of how Mr. Allen became a target of the SEALE Task Force in light of the Enterprise [i]nvoice …. [and] there are material omissions regarding the purported reliable informant." (Mot. at 68.) Neither of these "omissions" warrant a *Franks* hearing. First, the affidavit specifies how Allen became a target of the SEALE Task Force, the CRI identified Allen as the individual selling drugs by the name Boo Gotti. Second, as discussed in detail *infra*, Det. Griffis sufficiently established the CRI's reliability. Finally, Allen neglects to make any showing that Det. Griffis intentionally omitted facts in an effort to mislead the issuing judge. *See United States v. Speer*, 419 F. App'x 562, 571–72 (6th Cir. 2011).

address, the affidavit's remaining content provided the issuing judge a basis for finding that evidence of drug trafficking would be found at the residence.

The affidavit states, in relevant part, that an informant notified detectives that an individual going by the name "Boo Gotti" was trafficking narcotics in Cuyahoga County. (Doc. No. ¶ 9.) The CRI provided detectives with Boo Gotti's phone number and a description of his vehicles, including a license plate number. (*Id.*) Detectives, who were familiar with Allen from a previous drug trafficking arrest, showed the CRI a picture of Allen. (*Id.* ¶¶ 10, 11.) The CRI identified Allen as the individual "going by 'Boo Gotti' selling narcotics." (*Id.* ¶ 11.) The CRI called the phone number previously identified as belonging to Boo Gotti to arrange a controlled buy of narcotics. (*Id.* ¶¶ 9, 12.) Detectives surveilling the Linda Lane residence observed Allen "leave the residence and drive directly to the buy location." (*Id.* ¶ 12.) The CRI then met with Allen and completed a controlled buy of narcotics. (*Id.*) As explained in more detail *infra*, these facts alone establish sufficient probable cause to support the issuance of a search warrant. As such, Allen cannot meet the second prong of the *Franks* test and is not entitled to an evidentiary hearing.

### B.    Probable Cause

Allen also argues that "the affidavit lacks probable cause" on its face. (Mot. at 68.) Under the Fourth Amendment, search warrants must only issue "upon probable cause, supported by oath or affirmation…." U.S. Const. amend. IV. "'The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002) (quoting *United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001)). Courts reviewing an issuing judge's determination

that probable cause existed, "must determine, under a totality of the circumstances, whether the [judge] had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *Id.* (quoting *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)) (internal quotation marks omitted). There is no doubt that the issuing judge had a substantial basis for concluding that drug-related contraband would be discovered at the Linda Lane residence.

### a. The Controlled Buy

Allen first attacks the issuing judge's probable cause finding by claiming that "[t]he single controlled buy in this case does not give rise to probable cause to search Mr. Allen's home address." (Mot. at 68; Supp. Mot. at 93.) Specifically, Allen alleges that, because the controlled buy did not take place at the Linda Lane address, "the affidavit [does not] establish[] a sufficient nexus between the illegal activity and the place to be searched." (Supp. Mot. at 94.) Allen is correct, "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

"[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008). Such reliable evidence, however, does not require that "anyone ever purchase drugs directly from the [drug dealer's] residence…." *United States v. Jenkins*, 743 F. App'x 636, 644 (6th Cir. 2018); *see also United States v. Clariot*, No. 3:08-00023, 2008 WL 11351631, at *4 (M.D. Tenn. Nov. 25, 2008) (noting that a sufficient nexus "does not require any case-specific evidence of wrongdoing in the

home"). In fact, the Sixth Circuit has upheld warrants authorizing residential searches "despite only a limited connection between the residence and drug related activity[,]" *Gunter*, 266 F. App'x at 419, and "in the case of drug dealers, only a minimal connection must be shown." *United States v. Castro*, No. 1:07CR360, 2008 WL 2017571, at *10 (N.D. Ohio May 7, 2008). But a "'defendant's status as a drug dealer, standing alone,' will not 'give[] rise to a fair probability that drugs will be found in his home[.]'" *Jenkins*, 743 F. App'x at 642 (quoting *United States v. Frazier*, 423 F.3d 526, 532–33 (6th Cir. 2005)). While SEALE detectives were "familiar with Allen, having arrested him for heroin trafficking in 2012[,]" (*id.* ¶ 10) probable cause for searching the Linda Lane residence was established, not based on Allen's status as a former drug dealer, but based on detectives' first-hand observations.

Allen focuses almost entirely on what information Tiffany Jones provided to Enterprise, but he ignores the fact that detectives surveilled the residence "prior to and during the time when the CRI" contacted Allen to organize the controlled buy. (Doc No. 21-1 ¶ 12.) Detectives observed the silver SUV (license plate number GMC4021) in the driveway. (*Id.*) Shortly after the controlled-buy location was established, Detective Sara observed Allen exit the Linda Lane residence and drive directly to the buy location. (*Id.*) The CRI—who was provided covert recording equipment—gave Allen the pre-recorded buy money and Allen sold the CRI an amount of suspected heroin/fentanyl. (*Id.*) The CRI immediately met with Det. Griffis and turned over the purchased narcotics, which field tested positive for fentanyl. (*Id.* ¶¶ 12–13.) Following the controlled buy, detectives "observed the vehicle utilized by Allen (Ohio registration GMC4021) parked in the driveway of 5820 Linda Lane … (said residence to be searched) in the early morning hours and late evenings…." (*Id.* ¶ 14.)

The Court finds that these first-hard observations constitute reliable evidence connecting drug trafficking with the Linda Lane residence. *See Gunter*, 266 F. App'x at 419 (holding that an officer who observed a known drug dealer "visit his residence right before he traveled to the site of a drug sale" provided reliable evidence connecting drug trafficking to the home); *see also Jenkins*, 743 F. App'x at 644 ("Drug dealers cannot immunize themselves from search of a residence used to store their supply simply by ensuring that all drug deals take place in parking lots."); *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (theorizing that a sufficient nexus would be established between a home and drug activity if "surveillance indicat[ed] that [a defendant] had used [his] car to transport heroin from his home … on the day in question.").

### b.    Reliability of the Confidential Informant

Next, Allen argues that the affidavit lacked probable cause because the CRI was not proven to be reliable. (Mot. at 70.) Det. Griffis' affidavit states that the CRI has proven reliable because the CRI "has provided information about drug traffickers that has been corroborated by other sources, as well as locations where narcotics are sold from that have also been corroborated by other sources, and has worked with the SEALE Narcotics Task Force on other successful narcotics investigations." (Doc. No. 21-1 ¶ 16.) Allen attacks this portion of the affidavit as "conclusory" and argues that the information provided by the CRI was not independently corroborated. (Mot. at 70–71; Supp. Mot. at 94–95.) But "independent corroboration of [a] tip by police is not required when the [issuing] court is provided with assurances that the informant is reliable." *Thomas*, 605 F.3d at 307 (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc)).

True, Det. Griffis could have included specific information regarding SEALE's previous dealings with the CRI, but "such a level of specificity is not necessary...." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013). It is well established that an "affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) (citing cases). Here, Det. Griffis' averment that the CRI assisted the SEALE Narcotics Task Force during previous successful narcotics investigations is sufficient "to establish that the informant had given accurate information in the past and thus that the informant was reliable." *Brown*, 732 F.3d at 574; *see also United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) ("As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.")

In addition, and contrary to Allen's assertion otherwise, SEALE detectives corroborated a great number of the CRI's assertions. The CRI informed SEALE detectives that a black male with the nickname "Boo Gotti" was selling drugs in and around Garfield Heights. (Doc. No. 21-1 ¶ 9.) The CRI provided detectives with Boo Gotti's phone number and a description of his vehicle—a silver SUV with Ohio registration GMC4021. (*Id.*) Detectives showed the CRI a picture of Allen and the CRI identified him as Boo Gotti. (*Id.* ¶ 11.) Detectives observed the vehicle that the CRI described—a 2018 Toyota SUV with Ohio registration GMC4021—parked in the driveway at 5820 Linda Lane, an address associated with Allen. (*Id.* ¶¶ 10, 12.) When the CRI set up the controlled buy, the CRI contacted Allen by calling the phone number previously identified as belonging to Boo Gotti. (*Id.* ¶ 12.) Finally, the CRI completed a controlled buy of narcotics from Allen. (*Id.* ¶¶ 12, 13.) Given SEALE detectives' independent corroboration of the

12

CRI's allegations related to "Boo Gotti," and Det. Griffis' assurance that the CRI proved reliable during previous investigations, there can be no doubt that the affidavit was sufficient to support the issuing judge's conclusion that the CRI was reliable and, thus, a finding of probable cause.

### C.     Timeliness of Execution

There is also a question of whether the warrant was executed within the time allowed under Criminal Rule 41(e)(2)(A), which states that a "warrant must command the officer to … execute the warrant within a specified time no longer than 14 days[.]" Fed. R. Crim. P. 41(e)(2)(A)(i). There is no dispute that the warrant specifies such a period; the warrant states "[t]his warrant must be executed within (3) days of the date hereof…." (Doc. No. 21-1 at 74.) But Allen argues that the warrant—that was issued on March 14, 2019—was not "executed until March 19, 2019, five days after the warrant was authorized." (Supp. Mot. at 95.)

The parties agree that a "Cuyahoga County Common Pleas [j]udge … signed the search warrant on Thursday March 14, 2019[,]" and that the warrant was executed on March 19, 2019. (Opp'n at 105; Supp. Mot. at 95–96.) The question is whether the warrant was executed within the specified three-day window.

Ohio Rule of Criminal Procedure 45(A) governs "computing any period of time prescribed … by order of the court." Under the rule, "the date of the act or event from which the designated period of time begins to run [here, the date the warrant was signed] shall not be included." Ohio R. Crim. P. 45(A). Further, "[w]hen the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in computation." *Id.* Applying these rules to the search warrant at issue, Friday March 15, 2019 was day one, Monday March 18, 2019 was day two, and Tuesday March 19, 2019—the day the

search warrant was executed—was day three. As such, there was no violation of state or federal time-keeping rules.[3]

### D.  *Miranda* **violation**

In his reply brief, Allen raised, for the first time[4], the issue of a potential *Miranda* violation. During execution of the warrant, Allen "was advised of the search warrant and was asked if there were any firearms, narcotics, or currency inside the house." (Reply at 127.) Allen replied, "there [is] a firearm on the bedroom dresser, and cash on the dresser as well." (*Id.*) Because officers initiated this conversation while he was in custody, Allen requests "that this Court suppress … [his] statements … made at the time of the search." (*Id.* at 128.) In its sur-reply, the government concedes that Allen "was in custody and was not mirandized prior to telling officers that there was a firearm on the dresser" and, therefore, the government "will not seek to elicit testimony regarding Allen's statement." (Doc. No. 31 at 132.) As such, the government shall not be permitted to elicit testimony from Allen regarding his custodial statement. *See United States v. Patane*, 542 U.S. 630, 643, 124 S. Ct. 2620, 159, L. Ed. 2d 667 (2004) (holding that the exclusion of unwarned statements is a "complete and sufficient remedy" for *Miranda* violations).

---

[3] Even if the Court was to assume that the warrant was executed outside the three-day window, the delay would not "render the search unreasonable" because "there is nothing in the record to indicate that the circumstances, related to the officer's affidavit affording probable cause for the issuance of the search warrant, changed before it was executed." *United States v. Richmond*, 694 F. Supp. 1310, 1311 (S.D. Ohio 1988).

[4] Because Allen raised this issue for the first time in reply, the Court granted the government leave to file a sur-reply to address the possible *Miranda* violation.

## III. CONCLUSION

For all the foregoing reasons, Allen's motion to suppress and for a *Franks* hearing is DENIED as to the search, but it is GRANTED as to Allen's custodial statements in violation of *Miranda*.

**IT IS SO ORDERED**.


Dated: April 29, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

15