**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-647 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEANDRE ALLEN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On October 24, 2019, an indictment issued charging defendant Deandre Allen ("defendant" or "Allen") with one count of unlawful possession of a machine gun, four counts of possession with intent to distribute various controlled substances, and one count of possession of a firearm in furtherance of a drug trafficking crime. (Doc. No. 1 ["Ind."].) A jury trial in this matter is set for April 5, 2021.

Now before the Court are two motions filed by Allen: (1) "Defendant's Motion To Reopen Evidence Regarding Defendant's Motion To Suppress And Supplemental Motion To Suppress And Permit Testimony" (Doc. No. 41 ["Mot. Reopen"]); and (2) "Defendant's Motion For Court To Order Discovery Production; To Suppress Evidence; To Set Suppression Hearing" (Doc. No. 43 ["Mot. Disc."]). Plaintiff United States of America (the "government") opposes the motions (Doc. No. 46 ["Opp'n"]), and Allen has filed a consolidated reply. (Doc. No. 47 ["Reply"].) For the reasons that follow, both motions are DENIED.

## I. BACKGROUND

The charges relate to a search warrant that was executed on March 19, 2019 at a residence located at 5820 Linda Lane in Garfield Heights, Ohio (hereinafter, "Allen residence"). (*See* Ind.) The search warrant was supported by an affidavit that was sworn to by Detective Michael Griffis ("Det. Griffis"). (Doc. No. 26-1 (Affidavit for Search Warrant ["Warrant Aff."]).) The Court's April 29, 2020 memorandum opinion and order denying defendant's motions to suppress discussed at length the information contained in the affidavit, and the Court will not repeat it herein. (*See* Doc. No. 33 (Memorandum Opinion and Order ["MOO"]).) For these purposes, it is sufficient to note that the affidavit provided details relating to a confidential reliable informant ("CRI")—who apprised law enforcement of a drug dealer known as "Boo Gotti"—and the subsequent controlled buy between the CRI and Boo Gotti, who would ultimately be identified as Allen. (*Id.*) At issue in the first round of suppression motions was a paragraph related to a vehicle associated with Boo Gotti. Paragraph ¶ 10 provided:

> Affiant states that Detective ran the license plate of "GMC4021" through LEADS, and discovered that was a rental vehicle from Enterprise. Detectives learned that the individual that rented the vehicle was a female by the name of Tiffany Jones, who gave an address of 5820 Linda Lane, Garfield Hts (Cuyahoga) Ohio 44125 (said address to be seared). Detectives ran the address of 5820 Linda Lane through Accurint, and discovered that a male by the name of Deandre Allen was associated with that address as well. SEALE Detectives are familiar with Allen, having arrested him for heroin trafficking in 2012.

(*Id.* ¶ 10.)

In his motion and supplemental motion to suppress, Allen argued, in part, that the affiant purposefully misled the issuing magistrate because the portion of the sentence that provided that Tiffany Jones "gave an address of 5820 Linda Lane, Garfield Hts (Cuyahoga) Ohio 44125" was

2

untrue. In support, defendant offered the Enterprise rental agreement that listed a billing address other than the Allen residence and an affidavit from Jones indicating that she never gave Enterprise the Allen residence as her address, though she admitted that she did eventually live there. (Doc. No. 30-2 (Affidavit of Tiffany Jones ["Jones Aff."]) ¶¶ 7–8.) Defendant sought a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) and to suppress evidence seized from the Allen residence on March 19, 2019.

The government opposed the motions. While it conceded that the Enterprise rental agreement did not list the Allen residence as the billing address, it clarified that Det. Griffis contacted Enterprise during his investigation and Enterprise informed him that Jones provided the Allen residence as her address. Though the affidavit language was not entirely clear on this point, the government insisted that there was no evidence that Det. Griffis intentionally misled the issuing magistrate.

The Court denied the suppression motions. As an initial matter, the Court found that neither the Enterprise invoice nor Jones' affidavit constituted evidence that Det. Griffis made a deliberate false statement or acted with a reckless disregard for the truth. (MOO at 149.[1]) Further ruling, the Court held that no evidentiary hearing was necessary because, even if the statement in question was deliberately false and excised from the affidavit, the remaining paragraphs supported a finding of probable cause to search the Allen residence. (*Id*. at 149–55.)

In his motion to reopen suppression proceedings, defendant once again turns to ¶ 10 of the warrant affidavit. As detailed *infra*., defendant suggests that he has uncovered new evidence that demonstrates that Det. Griffis could not have learned of the Allen residence through

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Enterprise. He renews his request for a *Franks* hearing and a reevaluation of probable cause. By his discovery motion, defendant seeks the identity of the CRI and requests discovery relating to the controlled buy outlined in the warrant affidavit.

## II. MOTION TO REOPEN SUPPRESSION PROCEEDINGS

According to defense counsel, recent interviews with two Enterprise employees call into question the government's representations regarding the warrant affidavit. Defense counsel indicates that the defense team interviewed the Enterprise employee and manager who were on duty at the time Jones' rental agreement was processed. While neither employee remembered the Jones' rental agreement, both agreed that they list as the address on the rental agreement the address supplied by the client, even if it differs form the address on the client's driver's license. Further, only the manager, Perry Sheid, remembered the name of Det. Griffis, but even he could not put the name in context or remember if ever spoke with him. (Mot. Reopen at 201–02.) This showing, defendant suggests, entitles him to a *Franks* hearing.

Under *Franks*, if the defendant shows by a preponderance of evidence that a search warrant affiant committed perjury or made a statement in reckless disregard for the truth, the offending statements must be excised from the affidavit and probable cause reassessed. *Franks*, 438 U.S. at 155–56. To be entitled to a *Franks* hearing, a defendant must "(1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and (2) prove[ ] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017)). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported

by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. The Sixth Circuit has characterized this as "a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). Further, even if the defendant overcomes these factual hurdles, a *Franks* hearing will only be warranted "[i]f when the alleged false statement is put aside, the affidavit no longer provided the court with probable cause[.]" *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011); *see Franks*, 438 U.S. at 155–56.

Defendant's proffer fails to satisfy even the initial factual requirements for a *Franks* hearing: that the affidavit contained a false statement that was made knowingly and intentionally. By defendant's own admissions, neither Enterprise employee remembered the Jones rental agreement or whether he spoke with Det. Griffis. At best, their anticipated testimony would establish that it is their typical practice to include on the invoice the billing address supplied by the client. The proffer does not establish by a preponderance of the evidence that the conversation between Enterprise and Det. Griffis did not take place or that the information regarding the Allen residence address was not conveyed by Jones, let alone that Det. Griffis knowingly and intentionally lied or exhibited a reckless disregard for the truth regarding this information.

But even if this new evidence inched defendant closer to meeting his factual burden, a *Franks* hearing would be unnecessary because, setting aside the allegedly false statement, the warrant affidavit is still supported by probable cause to search the Allen residence for evidence of drug trafficking. *See, e.g., United States v. Wilson*, 501 F. App'x 416, 422 (6th Cir. 2012) (Defendant was not entitled to a *Franks* hearing because, even if the false statements were

5

redacted, the remaining information in the warrant affidavit "provided a sufficient nexus to cocaine trafficking [at the residence] to support probable cause for the search warrant").

Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 244 n.13. "This requires that the affidavit or warrant request 'state a nexus between the place to be searched and the evidence sought.'" *United States v. Jenkins*, 743 F. App'x 636, 642 (6th Cir. 2018) (quoting *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008)). "This belief that items sought will be found at the location to be searched may 'be supported by less than prima facie proof but [requires] more than mere suspicion.'" *Id*. (quoting *Williams*, 544 F.3d at 686) (further quotation marks and citation omitted)).

"[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008). Such reliable evidence, however, does not require that anyone ever purchase drugs directly from the drug dealer's residence. *Jenkins*, 743 F. App'x at 644. And although "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking," … a defendant's status as a drug dealer, standing alone, will not give rise to a fair probability that drugs will be found in his home[.]" *Id*. (quotation marks and citations omitted). "Therefore, to meet the probable cause standard, an affidavit must include some facts connecting the residence to drug-dealing activity beyond just the defendant's status as a drug dealer." *Id*. (citing *United*

6

*States v. Brown*, 828 F.3d 375, 382–84 (6th Cir. 2016)).

Here, even if the allegedly false statement is removed, defendant is still unable to overcome the fact that the remaining information supplies the necessary nexus to justify the search. As the Court previous noted, the warrant affidavit provides that detectives surveilled the Allen residence "prior to and during the time when the CRI contacted Allen" to organize the controlled buy. (Warrant Aff. ¶ 12.) Allen was observed leaving the Allen residence in the rented vehicle and traveling directly to the location of the controlled buy. (*Id.*) The CRI—who was provided covert recording equipment—gave Allen the pre-recorded buy money and Allen sold the CRI an amount of narcotics that field tested positive for fentanyl. (*Id.* ¶¶ 12–13.) Further surveillance revealed the rented vehicle "utilized by Allen parked in the driveway of [the Allen residence] in the early morning hours and late evenings after the controlled buy." (*Id.* ¶ 14.)

The fact remains that these first-hand observations, along with Allen's status as a known drug dealer, constitute reliable evidence connecting drug trafficking with the Allen residence. *See Jenkins*, 743 F. App'x at 644 (information in warrant application that known drug dealer utilized a vehicle registered to a particular residence, and was seen driving the vehicle immediately after a controlled buy, supplied the necessary nexus to search the residence);[2] *Gunter*, 266 F. App'x at 419 (holding that an officer who observed a known drug dealer "visit[] his residence right before he traveled to the site of a drug sale" provided reliable evidence connecting drug trafficking to the home).

---

[2] Without support, defendant suggests that the connection to the Allen residence is somehow broken by the fact that the affidavit does not provide that defendant returned to his residence immediately after the controlled buy. (Reply at 225.) However, he fails to explain how the absence of this fact defeats the reasonable inference that Allen had stored the narcotics for the controlled buy at his residence. *See Brown*, 828 F.3d at 383 (theorizing that a sufficient nexus would be established between a home and drug activity if "surveillance indicat[ed] that [a defendant] had used [his] car to transport heroin from his home … on the day in question.")

Nevertheless, defendant argues that the necessary nexus does not exist because, without the allegedly false statement, the warrant affidavit does not explain what led police to first connect defendant with the vehicle or initiate surveillance of the Allen residence. (Mot. Reopen at 203.) Defendant suggests that these details are necessary for the reader to fully understand all the steps the police took in its investigation, but such exacting detail is not necessary. *See United States v. Barbosa*, 896 F.3d 60, 68 (1st Cir. 2018) (An officer is not required to include "every shred of known information … in a warrant affidavit, [and] the omission of a particular detail, without more, is not enough" to invalidate a warrant) (citing *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990)). While defendant once again focuses on what would be missing from the affidavit without the challenged language in paragraph 10, it is still true that what remains—including the eyewitness accounts of law enforcement connecting the residence to the drug activity—are sufficient to support probable cause. *See United States v. Joy*, 454 F. Supp. 3d 675, 683 (E.D. Mich. 2020) ("It is well settled that '[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.") (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)); *see, e.g., United States v. Roberson*, 332 F. App'x 290, 295 (6th Cir. 2009) (noting that "even if the information obtained from the anonymous source is excised from the affidavit, the evidence gathered from the officers' independent investigation and surveillance of [the searched residence] is sufficient to establish probable cause for the issuance of a warrant.")[3]

---

[3] In *Roberson*, a Sixth Circuit panel was faced with an analogous situation. There, an anonymous tipster advised law enforcement that defendant was engaged in drug trafficking activities. The same day they received the tip, officers initiated an investigation to verify the information. Through trash pulls, interviews with neighbors, and surveillance of defendant's residence, officers were able to confirm that defendant was engaged in the illegal manufacture and sale of narcotics. Based upon the information gleaned from the tipster, as well as the investigation that followed, officers obtained a search warrant. At trial, the district court found that the search warrant affidavit improperly

Allen has not shown that any of the information in the search warrant affidavit was false or made with reckless disregard for the truth. Moreover, even if the contested language is excised, the warrant affidavit still supports probable cause to believe that evidence of drug dealing would be found at the Allen residence. Accordingly, and for these reasons, defendant's motion to reopen suppression proceedings is DENIED.

### III. MOTION FOR DISCOVERY OF CRI AND CONTROLLED BUY

Defendant also seeks the disclosure of the identity of the CRI and discovery relating to the controlled buy outlined in the warrant affidavit. The government has a limited privilege to withhold the identity of a confidential informant. *Roviaro v. United States*, 353 U.S. 53, 59–62, 77 S. Ct. 623, 1 L Ed. 2d 639 (1957); *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993); *see United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) (citation omitted). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement[,]" *Roviaro*, 353 U.S. at 59, in that it encourages persons to cooperate with the police in such a capacity. *Id.* The privilege is not, however, absolute. "Where disclosure of an informant's identity is relevant and helpful to the defense of an accused, or is essential to a fair adjudication of the case, the privilege must give way." *United States v. Leslie*, No. 4:02-cr-39, 2002 WL 32059743, at *3 (E.D. Tenn. Oct. 4, 2002) (citing *Roviaro*, 353 U.S. at 60–61) (omitting further citations); *see United States v. Hammons*, 411 F. App'x 837, 843 (6th Cir.

---

referred to the tipster as a "confidential informant" but determined that the affidavit was sufficient, even without any reference to the tipster or his information, to support the search of defendant's residence. On appeal, defendant challenged the district court's denial of its motion to suppress. The Sixth Circuit affirmed the defendant's conviction. Even though the officers initially connected defendant to the drug trafficking through the anonymous tip and all evidence of it was excised from the affidavit, the court held that the information officers obtained "through the same-day investigation provided probable cause for the warrant's issuance." *Id*. at 295.

2011) (citations omitted).

Supreme Court and Sixth Circuit law teaches that, "[t]o determine whether the government is required to disclose the identity of the informant, [courts] balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" *United States v. Doxey*, 833 F.3d 692, 706 (6th Cir. 2016) (quoting *Roviaro*, 353 U.S. at 62); *Moore*, 954 F.2d at 381 (similar) (citation omitted). "This depends 'on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Doxey*, 833 F.3d at 706 (quoting *Roviaro*, 353 U.S. at 62; citing *United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007)). A motion to reveal the identity of confidential informants is usually denied "when the informer was not a participant in the underlying alleged crime, and instead 'was a mere tipster or introducer.'" *Doxey*, 833 F.3d at 707 (quoting *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985) (per curiam)).

The burden of establishing the need for disclosure of an informant's identity is upon the party who seeks it. *See Moore*, 954 F.2d at 381 (citing *United States v. Hanna*, 341 F.2d 906, 907 (6th Cir. 1965)). A mere request is not sufficient to establish need. *United States v. Smith*, 90 F. App'x 120, 125 (6th Cir. 2004) (holding that the denial of a defense motion to compel disclosure of any informant's identity is not an abuse of discretion where defendant made no showing as to how such disclosure would substantively assist the defense) (citing *Sharp*, 778 F.2d at 1187) (quotation marks omitted). Speculation as to helpfulness also falls short of establishing need. *See United States v. Williams,* 898 F.2d 1400, 1402 (9th Cir. 1990) (informant identity did not need to be revealed where informant's information was only used to obtain

search warrant); *Sharp*, 778 F.2d at 1187 ("'Mere conjecture or supposition about the possible relevance of the informant's testimony is insufficient to warrant disclosure.'") (quoting *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979)). Instead, a defendant must come forward with probative evidence supporting the need for disclosure. *Id*.

It is defendant's position that the details surrounding the controlled buy, including the identity of the CRI, are necessary to the preparation of his defense. Although information gleaned from the controlled purchase of fentanyl was used in the search warrant affidavit, defendant was not charged with a crime regarding the controlled buy. Nevertheless, defendant argues that the facts and circumstances surrounding the controlled buy are "intrinsic to the case and relevant to both the suppression issue and the trial of the merits." (Disc. Mot. at 210.)

Under similar circumstances, the Sixth Circuit has held that the government need not disclose the identity of the confidential informant. *See United States v. Ray*, 803 F.3d 244, 274 (6th Cir. 2015). In *Ray*, the court held that the identity of a confidential informant was not relevant or helpful to the defense because "[t]he only record evidence of the role played by the [confidential informant] in this case is that the [confidential informant] supplied the information to law enforcement that ultimately led to a fruitful search." *Id*. The court reasoned that "Ray was not charged with any crimes related to the controlled buy, thus the [confidential informant] was not involved in, and could not testify about, the crimes for which Ray was charged and could not have provided testimony to any fact relevant to those charges." *Id*.; *see, e.g., Williams*, 898 F.2d at 1402 ("The extent of the informant's usefulness was to establish probable cause to search").

Similarly here, defendant was not charged with any crimes relating to the controlled buy, but was, instead, charged with crimes associated with the fruits of the search warrant the

controlled buy helped secure. The CRI was not a witness to any of the evidence related to the search warrant that was executed after the controlled buy, and the government represents that the CRI will not be testifying at trial. (Opp'n at 223.) *See also Doxey*, 833 F.3d at 707 (identity of confidential informant properly withheld where the informant "was merely a tipster, and not 'an active participant in the events underlying [Doxey's] potential liability'") (quoting *Sharp*, 778 F.2d at 1186 n.2). Defendant has not demonstrated how the identity of CRI would be relevant or helpful to his defense, or how the disclosure would be "essential to a fair trial." *See Ray*, 803 F.3d at 274; *see also United States v. Beals*, 698 F.3d 248, 270 (6th Cir. 2012) (No disclosure of confidential informant when "[t]he informant helped orchestrate *the search* that led to discovery of incriminating evidence, not the crimes themselves.") (emphasis in original). The Court will not require the disclosure of the identity of the CRI. *See, e.g., United States v. Cooper*, No. 08-20465, 2009 WL 1384145, at *6 (E.D. Mich. May 14, 2009) (denying motion under similar circumstances and collecting cases).

For many of the same reasons, the Court will not require production of evidence—cell phone evidence, video and audio surveillance, and physical evidence—relating to the controlled buy. In his reply, defendant suggests that evidence that the control buy money was not located at his residence would demonstrate his innocence of the charges in the indictment. (Disc. Mot. at 226.) But it is no defense to a charged offense that defendant did not commit a different uncharged crime. As such, there is no basis under *Brady*, *Giglio*, or Fed. R. Crim. P. 16 to require production at this time. *See, e.g., United States v. Parks*, 1:08-cr-48, 2009 WL 1617010, at *3 (E. D. Tenn. June 9, 2009) (defendant was not entitled to footage of controlled buy because defendant was not charged with any crimes relating to the controlled buy and, therefore, the

evidence was not material to the defense). However, should the government seek to offer evidence of the controlled buy in its case-in-chief as "other acts" evidence under Fed. R. Evid. 404(b), or background or res gestae, the Court may revisit this ruling.[4]

### IV. CONCLUSION

For the foregoing reasons, defendants' motions to reopen suppression and to compel discovery relating to the controlled buy are DENIED.

**IT IS SO ORDERED**.

Dated: January 25, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[4] For the same reasons, defendant's prior motion to compel production of the identity of the CRI and discovery from the controlled buy (Doc. No. 39) is also DENIED.